JOHN MARTIN *v.* HAMILTON BLYDENBURGH, *President of the Nassau Bank.*

The owner of a bank bill accidentally tore it into two nearly equal parts, one of which, containing no words giving it a negotiable character, was lost. The bank, on demand being made upon it for the amount of the mutilated bill, refused payment until indemnified by the owner against the loss which would ensue to it from the refusal of the Bank Department to issue a new bill, or to re-transfer so much of its security pledged for the redemption of its circulation.

*Held*, that the bank was liable for the amount of the note.

1. The embarrassment to the bank in enabling it to procure another bill, of re-transfer of an equal amount of its securities, does not furnish any defence to such an action.

2. This was not a case of a *lost note*, and the provisions of 2 Revised Statutes, 406, §§ 75, 76, requiring a bond of indemnity to be given by a party seeking to recover on lost notes, etc., have no application.

3. This was clearly such a mutilated note as is contemplated by the act of 1840, ch. 363, § 5, which it would be the duty of the Superintendent of the Bank Department to receive and deliver in lieu thereof to the bank another note of the same amount.

APPEAL by the defendant from a judgment entered on the report of a referee.

The action was brought against the defendant as President of the Nassau Bank of the City of New York, upon a bill of said Bank for one hundred dollars, which was duly registered in the Bank Department by the number 265, and signed by the President and Cashier.   Late at night on the day of receiving the bill, the plaintiff accidentally tore the bill in two nearly equal parts, and lost one of them, which contained upon it the name of the Cashier and Register in the Bank Department. The portion retained by the plaintiff had upon it the following words and figures :

NASSAU BANK.                                     0.

January 3, 1860.

*On demand,*

*dollars, to E. B., or bearer.*

*No* 265.

*Cash.*          H. BLYDENBURGH, *Prest.*

The grounds of the defence will appear in the opinion of the referee.

HAMILTON W. ROBINSON, *Referee.*   The defendants are a banking association, incorporated under the general banking law, and, by their articles of association, their charter is to continue until the 1st of November, 1952.

The plaintiff has presented the portion of the bill which he retained, and demanded payment of the amount, but has been refused.

He has also applied to the Superintendent of the Bank Department, to issue, in lieu thereof, another registered note to the same amount, having the assurance of the defendant that he would execute a new bill, or pay him the amount, if the Superintendent of the Bank Department would issue one in its stead; but this application having been refused, the plaintiff has pursued the only course left him for the recovery of the amount of the bill, by commencing this action.

Were this an action against the maker of an ordinary promissory note, which had been similarly torn into two parts, one of which had been lost, there could be little question as to the right of the plaintiff to recover the amount of the face of the

bill, the same as if it were actually destroyed. The note or bill, by this accident, ceased to present, in either part, the essential features of a promissory note, and neither portion contained any such terms as imported an obligation to pay any sum of money whatever. The part which was lost possessed no negotiable character, nor could its possession, by any other person than the plaintiff, confer any right to any portion of the money which was payable by the terms of the original bill. (*Ed. on Prom. Notes,* 307, cases cited, note 2.) The character of the bill, as a negotiable promissory note, was destroyed, and the right to any recovery exists in the fact of its ownership, at the time when it lost that character.

This is not the case of a *lost note,* since there is nothing lost which constitutes a note or obligation, or which would lay the foundation for any recovery by any other person against the makers. The provisions of the Revised Statutes, (2 *R. S.* 406, §§ 75, 76,) requiring a bond of indemnity to be given by the party seeking to recover on *lost notes* and bills of exchange, have no application, nor does any such reason exist in the case of a mutilated note, for requiring indemnity against claims upon it by other persons, as prevailed in relation to a lost note. (*Story on Bills,* § 44; *Story on Prom. Notes,* § 445.)

The objections urged by the defendant against a recovery are not predicated upon any apprehended claim of any *bona fide* holder of the lost portion of this bill, but from the inconvenience and injury which it is contended he will suffer in consequence of the refusal of the Superintendent of the Bank Department to issue a new bill, instead of the mutilated portion of the original bill, of which the plaintiff still has possession; and they claim that before the plaintiff should be permitted to recover, they are entitled to complete indemnity against the loss, which would ensue to them, from their inability to obtain another bill, or a re-transfer from the Bank Department of so much of the stocks or mortgages which, under the provisions of the banking law, were lodged by them for the protection of their circulation, as stood security for, or could be redeemed by, the bill in question.

No such difficulty could exist were these securities held by a private individual, as relief could be afforded by the Courts to the debtor for the restoration of his pledge, when the object

Martin v. Blydenburgh.

of the hypothecation had been accomplished ; but the embarrassment suggested is supposed to arise from the omission of any provision in the general banking law to either compel the issuing of another bank bill, instead of the one so injured, or to release so much of the securities of the bank, deposited with the Bank Department, as stood as security for the note, after it has been paid by the bank which issued it ; and the defendants express apprehension that so much of their securities must necessarily remain impounded until the expiration of their charter, notwithstanding the debt which it was to secure has been satisfied.

In my opinion, their apprehensions of difficulty, from any of these sources, do not furnish any defence against the note or bill in question.

*First*—This is clearly such a mutilated note as is contemplated by the act of 1840, chap. 363, § 5, which it would be the duty of the Superintendent of the Bank Department to receive, and deliver, in lieu thereof, to the defendants, when they presented it, another circulating note to the same amount.

To "mutilate" is "to deprive of some essential part," and, as already stated, this bill, by the absence of the part that has been lost, is deprived of so essential a part as to have lost its character as a promissory note, while the lost part is equally defective as a bank bill, and inoperative as a pecuniary obligation.

The statute has, under such circumstances, conferred upon a banking association, or individual banker, the absolute right to have another note of the same amount issued in lieu of the mutilated note. It does not impose the necessity of producing the parts of the note of which it has been deprived, or of establishing by proof the annihilation of such fragments as may be wanting.

When, *as a matter of fact*, a circulating bank bill has been mutilated, and the case contemplated by the statute has occurred, the duty of the Superintendent is immediate and imperative, and if he refuses or neglects performance, it may be enforced by the courts.

Many cases might be supposed in which a fraud might be perpetrated, or mistake made, by which more than one note

might possibly be issued, instead of that which had been muti-lated; but the law assumes that the officer has the skill and the capacity so to act as to avoid the possibility of any such occurrence, and requires from him the same care and attention in the matter as in the performance of any other official duty: but,

*Second.*—Whatever may be the embarrassment to the defendants from a defect in the law, in enabling them to procure another bill in lieu of this mutilated note, or in being able to procure a re-transfer of an equal amount of the stocks or mortgages lodged as security for their circulating notes, it does not furnish, in either view, any defence to an action against them to enforce performance of their legal obligation to pay to the lawful holder, or to the person whom the law regards as occupying that relation, where the note has actually been deprived of its character as an entire perfect contract.

The Legislature, upon grounds of public policy, has required the deposit, with the Bank Department, of security for circulating notes, issued under the provisions of the general banking law; and in order to guard against the issuing of any bills for which such security has not been given, has also provided for the countersigning and registry of each note before it is delivered to the bank or banker making the deposit, for the purpose of enabling them to execute it and put it in circulation; but these formalities and pre-requisites do not enter into, or constitute any part of the contract with the lawful holder of the bill; the obligation to pay him the amount is absolute and independent of any question connected with the collateral securities in the Bank Department. The holder is in no manner responsible for any loss of the securities, or embarrassment in reclaiming them from the possession of the trustee, to which he has not contributed; and if he has been guilty of any misconduct in reference to them, he must be made responsible for it in an action in which the ground of complaint and cause of damage or loss are distinctly charged.

From the nature of the business contemplated by the general banking law, it must have been anticipated that many of the circulating notes issued by a bank would, in the ordinary occurrence of accidents, become lost or destroyed; but there is

Martin v. Blydenburgh.

nothing in its provisions which can be held in any way to relieve the bank or banker that had issued such notes from the ordinary common law liability of any other maker of a lost or destroyed note.

No provision is made for the issuing of other notes in their stead, nor for the re-transfer, upon request, of securities, to an equal amount for the lost or destroyed note, as is allowed upon the surrender or cancellation of circulating notes.

The loss or destruction of notes ordinarily implies negligence on the part of the loser, and the consequence ought to fall on him rather than upon the innocent party; but the contingency against which the courts are scrupulous to protect the innocent party is the possible claim of some subsequent *bona fide* holder, and the loss of the evidence by which the rights of the loser of the note may be substantiated, and, as to this, they exact a full indemnity.

The Legislature has, however, not seen fit to visit upon the holder or owner of lost or destroyed bank bills the penalty of forfeiture of his debt, or to impose upon him any other disability, or to exact from him any other security, than that which was required by the provisions of the Revised Statutes. (2 *R. S.* 406, §§ 75, 76.) Notwithstanding the inconvenience which would attend the loss or destruction of circulating notes to the bank or banker who issued them, from their inability, under the existing provisions of the banking law, to obtain other notes in their stead, or a re-transfer of their securities to an equal amount, prior to relinquishing the banking business, they would still be able to draw the interest or dividends upon them, and finally procure their surrender, after compliance with the formalities pointed out by the statute. But all this prospective inconvenience, in recovering full control of their collaterals, would furnish no defence to an action upon their lost bill, and their claim would be confined to such damages as they might show they had sustained from this impounding of their securities.

An action against the holder or owner, for injury sustained through his negligence, in losing or destroying the bill, would in such a case, be of doubtful success, especially as it is to be presumed that the Legislature would accord the same justice as would be meted out by the court as between private persons

Martin v. Blydenburgh.

and would not disregard any appeal for relief against injustice arising from any omission in the law by which the Bank Department were suffered to retain the securities after the object of the pledge had been satisfied. But, on the other hand, it might well be argued, that in the omission of any allusion to the contingency of the loss, or destruction of bank bills, or any marshaling of the securities, so as to make any particular portion of them stand specifically for any particular bills, (except in allowing a surrender of securities to the amount of bills delivered up and cancelled,) that the increase of security from this source, for the benefit of the outstanding circulating notes, was intentional.

Under these views, I am of the opinion that no defence, legal or equitable, is established, and that the plaintiff is entitled to recover the amount of the one hundred dollar bill, with interest since demand of payment.

Judgment for the plaintiff having been entered upon the report of the referee, the defendant appealed to the General Term.

*Augustus F. Smith*, for appellants.

I. No action at law will lie in this case, and the case of *Hinsdale* v. *Bank of Orange*, 6 Wend., 368, is not an authority to sustain the action since the law of 1840.

II. The Bank Department were right in refusing to give a new bill. This is not a mutilated bill within section 5. The Department are required " to receive mutilated circulating notes," and issue others. A mutilated note does not mean a destroyed note. A body is not mutilated when its vital parts are gone. A man is mutilated when his leg or arm is cut off. The leg or arm cannot be said to be mutilated when the body is taken from it. To mutilate, is " to cut off a limb or essential part of an animal body."—(*Webster*.) This part of the note produced cannot be said to be a mutilated note. It is no longer a note. Nothing of the vital principle remains. The Department was then not bound to receive it, nor to issue another.

III. If the Department were not bound to issue a new note, no bond could be given which would indemnify the defendant, short of one on which he could immediately recover back the money. In effect, then, no action, even in equity, could be sustained.

Martin v. Blydenburgh.

IV. But the referee required no bond whatever. If any action can be sustained, it can only be upon fully indemnifying the Bank.

*Townsend & Kane*, for respondent.

I. The plaintiff being the *legal owner* of the whole bill and the *holder* of a part, the other part having been lost by him, was entitled to recover.

The note or bill in this condition ceased to present in either part the essential features of a promissory note, and neither portion contained any such terms as imported an obligation to pay any sum of money whatever. The part which was lost possessed no negotiable character, nor could its possession by any other person than the plaintiff confer any right to any portion of the money which was payable by the terms of the original bill. The character of the bill as a negotiable promissory note was destroyed, and the right to any recovery exists in the fact of its ownership at the time when it lost that character. (*Edwards on Bills*, &c., 307, and cases there cited. *Hinsdale* v. *Bank of Orange*, 6 Wend., 378.)

II. The defendant is not entitled to *any indemnity from* plaintiff. The provisions of the Revised Statutes do not apply to this case. This was neither lost nor *negotiable*, nor does any such reason exist in relation to severed or mutilated notes requiring indemnity against claims upon them by other persons, as prevails in relation to a lost note. The defendant refused indemnity, not, however, upon the ground that the indemnity offered was not sufficient.

The plaintiff cannot be made responsible for the action of the Bank Department in unlawfully refusing to issue a new bill, and cannot be called upon to indemnify against any such event. *Story on Bills*, § 44. *Story on Prom. Notes*, § 445.

III. The portion of the bill upon which this suit is brought is a *mutilated note* within the meaning of the 5th Section of Chap. 363 of the Laws of 1840, and the bank superintendent should have issued another bill when requested to do so. The statute was intended for such cases as the present.

The Bank Department did not, however, refuse to issue another in lieu of part produced upon the ground that it was not a mutilated bill, but upon the ground that the plaintiff

would not (as he could not) state that the missing part was "*actually destroyed.*"

BY THE COURT.—DALY, F. J.—We have nothing to add to the reasons given by the Referee in support of his finding that the plaintiff was entitled to recover, and the report in our judgment should be affirmed.

Judgment affirmed.